Michael G. Doan, SBN 175649
Doan Law Firm
1930 S. Coast Hwy #206
Oceanside, CA 92054
Phone (760) 450-3333 • Fax (760) 720-6082
Mike@doanlaw.com

Attorney for Debtor
Aki T. Oya

# UNITED STATES BANKRUPTCY COURT

## Southern District of California

| | |
|---|---|
| In re:<br><br>AKI T. OYA,<br><br>          Debtor. | Case No.: 18-03598-CL13<br><br>**DEBTOR'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECONSIDERATION OF ORDER ANNULLING STAY AND REINSTATING CASE** |

Debtor, AKI T. OYA ("Aki"), by and through her attorney of record, submits the following Motion for Reconsideration and Memorandum of Points and Authorities in support of her Motion for Reconsideration based on mistake of law and fact pursuant to Fed. R. Bankr. P. Rules 9023 and 9024 and Fed. R. Civ. P. Rules 59(e) and 60(b).  Aki seeks to have her case reinstated and August 24, 2018 Order Granting Relief/Annulment of Automatic Stay vacated.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## FACTS

1) Aki and her husband ("Souichi") purchased their residence at 693 Poinsettia Park South, Encinitas, CA 92024 ("Residence") on November 2, 2001.

2) The Residence became encumbered with a non-recourse loan and first deed of trust recorded January 31, 2007 in the amount of $600,000.00 to Union Fidelity Mortgage, Inc. ("UNION").

3) The non-recourse loan and first deed of trust to UNION was eventually transferred to WELLS FARGO BANK, N.A., as Trustee f/b/o holders of Structured Asset Mortgage Investments II Trust 2007-AR4, Mortgage Pass-Through Certificates, Series 2007-AR4 ("WELLS FARGO").

4) Aki fell behind on the non-recourse loan with WELLS FARGO and a foreclosure date was set for June 18, 2018 on the Residence.

5) On June 15, 2018, Aki filed for Bankruptcy protection under Chapter 13 of the United States Bankruptcy Code in the Southern District of California, with Case Number 18-03598-CL13, case titled: <u>In re Aki Oya</u> (hereinafter "Bankruptcy Case") in order to stay the foreclosure and reorganize her finances.

6) Aki filed the Bankruptcy Case in pro per.

7) Aki listed WELLS FARGO in her Bankruptcy Case.

8) On June 16, 2018 at 02:18:00 am, the Bankruptcy Noticing Center ("BNC") sent notice of the Chapter 13 Bankruptcy Case to WELLS FARGO by electronic transmission pursuant to 11 U.S.C. §342(f). The notice contained a certification that the notice was sent under penalty of perjury.

9) On June 18, 2018 at 9:06 am, SELECT PORTFOLIO SERVICING, INC. ("SELECT"), servicer for WELLS FARGO, called Aki from telephone

2

number (801)594-6000 and confirmed they received notice of the Bankruptcy on behalf of WELLS FARGO and that the foreclosure sale would not take place at 10:00am that morning.

10) Since Souichi had knee surgery on the foreclosure date of June 18, 2018, both Aki and Souichi were unable to attend the sale to provide any backup notice to any potential buyer.

11) The following day, June 19, 2018, SELECT sent Aki and Souichi a letter confirming *"the previously scheduled foreclosure sale of the above noted property has been postponed and rescheduled to occur on 07/18/2018."*

12) There is no issue that SELECT and WELLS FARGO were on actual notice of the Bankruptcy Case and would not conduct the foreclosure sale.

13) Aki and Souichi later discovered that SELECT and WELLS FARGO had lied held the foreclosure sale as planned.

14) MAGNUM PROPERTY INVESTMENTS, LLC ("MAGNUM"), through its bidding agent, STRATEGIC ACQUISITIONS, INC. ("SAI"), was the highest bidder at the foreclosure sale on June 18, 2018 and paid $931,300.00.

15) Since WELLS FARGO was the only lien at $763,986.00, the highly reduced foreclosure price still reflected more than $167,000.00 in equity.

16) In her opposition to relief of stay (Docket #22-1, page 2), Aki claimed the fair market value of the property to be $990,000.00.  Aki is not a realtor and her value was wrong.

17) The fair market value of the Residence on the date of foreclosure was approximately $1,200,000.00.

18) The only encumbrance on the Residence on the date of foreclosure was for WELLS FARGO in the approximate amount of $748,000.00.

19) Aki and Souichi have been dispossessed of title to their Residence of nearly seventeen (17) years and over $450,000.00 in equity.

3

20) The foreclosure sale took place after the Bankruptcy Case was filed and was void. See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992).

21) MAGNUM and SAI are sophisticated real estate professionals that routinely purchase property at foreclosure sales and are well aware how Bankruptcy prevents such sales.

22) SAI is a privately-owned, institutional-grade, vertically-integrated, single-family residence operating platform focused on acquiring, renovating, leasing, selling and managing investment properties. Their senior management team previously established and led some of the largest institutionally-backed SFR groups deploying over $2 billion of equity capital. SAI has acquired, renovated, tenanted and managed or sold approximately 11,000 homes over the course of 30 years. SAI'S acquisition, rehab, leasing and management teams consist of over 180 employees and 120 dedicated construction professionals. SAI is privately owned and controlled.

23) MAGNUM is a real estate solutions company located in Belleair Bluffs, Florida in the Tampa Bay area, that has the ability to buy, sell, and wholesale real estate to either fix and flip or hold on to depending on the particular property and deal. MAGNUM invests in all types of real estate including: Single family homes, condominiums, townhouses, condos, apartments, and vacant land. MAGNUM uses their own cash and/or private financing.

24) It should no doubt be the custom and practice of MAGNUM and SAI to confirm any Bankruptcy stays right before any foreclosure sales.

25) At a minimum, MAGNUM and SAI were on inquiry notice of the Bankruptcy.

26) During the three days between June 15, 2018 and June 18, 2018, MAGNUM and SAI should have been able to confirm a Bankruptcy Case was filed which would prohibit the sale.

4

27) Despite presumed knowledge of the Bankruptcy, MAGNUM and SAI elected to bid on the Residence nevertheless.

28) Discovery will confirm whether MAGNUM or SAI were truly bona fide purchasers for value.

29) Neither MAGNUM or SAI were creditors in the Bankruptcy Case.

30) The only involvement with the Bankruptcy Case by MAGNUM or SAI was the post-petition purchase of the Residence when WELLS FARGO and SELECT willfully violated the automatic stay and codebtor stay and held the auction anyways.

31) On June 19, 2018, Aki and Souichi realized that the foreclosure was not postponed and that their Residence had actually been sold on June 18, 2018 at 10:00am.

32) On June 19, 2018, SELECT and WELLS FARGO admitted to Aki and Souichi that the foreclosure sale had taken place despite their representations otherwise.

33) On June 19, 2018, SELECT and WELLS FARGO initiated actions to remedy the wrongfully held foreclosure sale.

34) On June 21, 2018 at 10:19 am, Michael E. Harmon at First American Trustee Servicing Solutions emailed Aki and Souichi stating, *"Per our phone conversation the sale of this property has been **rescinded** due to the bankruptcy filing, and the **funds were returned to the 3rd party**.  Please be advised that **a sale date has not been set** for this property."*

35) The automatic stay under 11 U.S.C. §362 was in effect at the time the foreclosure sale took place on their Residence.

36) The co-debtor stay under 11 U.S.C. §1303 was in effect at the time the foreclosure sale took place on their Residence.

37) Despite the rescission and return of funds, on June 26, 2018, MAGNUM and SAI filed a Motion for Relief/Annulment of Automatic Stay in an attempt to

5

retroactively annul the stay on the sale so it could avoid being found in violation of the Bankruptcy Code stay provisions of 11 U.S.C. §362 and 11 U.S.C. §1303 and remedy the sale that was void.

38) Aki did not file her balance of schedules on time since Souichi had knee surgery on June 18, 2018 and was in intense care for several weeks.

39) On July 3, 2018, the Bankruptcy Case was dismissed on Motion of the Trustee since the balance of schedules were late.

40) Despite the dismissal, on July 3, 2018, MAGNUM and SAI filed a Notice of Intent to Proceed with Motion for Relief/Annulment of Automatic Stay, once again in an attempt to avoid being found in violation of Bankruptcy Code stay provisions under 11 U.S.C. §362 and 11 U.S.C. §1303 and remedy the void sale.

41) In light of the Notice of Intent to Proceed with Motion for Relief/Annulment of Automatic Stay, Aki filed a motion to vacate dismissal on July 5, 2018 so she could file her balance of schedules. Her Motion explained to the Court how Souichi's recent surgery interfered with her ability to timely file her balance of schedules.

42) On August 1, 2018, the Bankruptcy Court denied the motion to vacate without prejudice, due to *improper service* on all parties. Furthermore, the Court oddly claimed Aki needed to *"explain why she was unable to file the requirement documents."*

43) On August 15, 2018, the Bankruptcy Court granted the Motion for Relief/Annulment of Automatic Stay with respect to the Residence, MAGNUM and SAI, and validated the foreclosure sale.

44) Aki was never represented by legal counsel in the Bankruptcy Case.

45) Souichi was never afforded any opportunity to appear and be heard.

6

46) Being unrepresented, Aki and Souichi were unable to provide any competent defense to the pleadings and legal arguments of MAGNUM and SAI to oppose the Motion for Relief/Annulment of Automatic Stay.

47) On August 24, 2018, the Bankruptcy Court entered its final order on the Motion for Relief/Annulment of Automatic Stay.

48) The August 24, 2018 final order under 11 USC 362(d)(1) never granted any stay relief to WELLS FARGO or SELECT under 11 U.S.C. §362 or 11 U.S.C. §1303.

49) On August 23, 2018, Aki and Souichi secured the legal representation of Doan Law Firm to address the August 24, 2018 final order under 11 USC 362(d)(1) and wrongful foreclosure.

50) Doan Law Firm immediately filed a lawsuit in federal court on August 27, 2018 and brought this motion for reconsideration.

51) To date, WELLS FARGO and SELECT have never requested any stay relief under 11 U.S.C. §362 or 11 U.S.C. §1303.

52) Despite the foreclosure, WELLS FARGO and SELECT continue to report false information about its claim against Aki and Souichi to TransUnion, Equifax, and Experian.

53) Despite the foreclosure, WELLS FARGO and SELECT continue to falsely report to TransUnion, Equifax, and Experian that $763,986.00 remains outstanding for Aki and Souichi.

54) Despite the foreclosure, WELLS FARGO and SELECT continue to falsely report to TransUnion, Equifax, and Experian that $96,740.00 remains past due by Aki and Souichi.

55) Despite the foreclosure, WELLS FARGO and SELECT continue demand money from Aki and Souichi on debt and property that do not exist as a matter of law.

7

56) On August 15, 2015, almost two months after the sale of the Residence, WELLS FARGO and SELECT sent a billing statement to Aki and Souichi claiming $6,245.28 was presently due and that $104,154.25 was past due. The statement also stated, *"We have not received all of your mortgage payments due since you filed for bankruptcy."*

57) But for WELLS FARGO and SELECT unlawfully conducting the foreclosure sale despite the Bankruptcy Case, MAGNUM through its bidding agent SAI would have never purchased the Residence at the foreclosure sale.

58) But for MAGNUM and SAI being ignorant of the Bankruptcy Case, they would have never purchased the Residence at the foreclosure sale.

59) Had the stays under 362 and 1301 not have been violated, Aki her husband could have listed, marketed, and sold the Residence for fair market value during her Chapter 13 case.

60) Aki and Souichi have been taken advantage of by MAGNUM and SAI who were never parties to the Bankruptcy.

61) Aki and Souichi have lost their one and only asset with over $450,000.00 in equity and are left with over $127,000.00 in unsecured debt, all at the expense of Corporate Profits.

62) MAGNUM and SAI should not be allowed to receive a windfall and capitalize on the stay violations by WELLS FARGO and SELECT at the expense of taking over $450,000.00 from Aki and Souichi.

63) As a direct result of the wrongful foreclosure sale, Aki and Souichi incurred damages consisting of mental and emotional distress, anxiety and depression.

64) Plaintiff Aki is sixty-eight years old and Souichi is fifty-three years old and both are Japanese immigrants who never thought that in America such a wrongful foreclosure could take place.

65) Aki and Souichi have lived in the Residence for over seventeen years and raised two sons there. Aki and Souichi have many memories in their

8

Residence and now are in fear that they will soon be wrongfully evicted from their Residence.

66) Aki and Souichi's Residence has been a place for family celebrations and church gatherings and the uncertainty of what will happen to their Residence and investment and has caused them intense anxiety.

67) Aki and Souichi are unable to sleep at night. They both have experienced waking up in the middle of the night and not being able to go back to sleep which prior to the wrongful foreclosure they had no issues with sleeping.

68) Aki has experienced intense headaches since the wrongful foreclosure and is taking prescription medication.

69) Souichi who had a knee operation on the very day of the wrongful foreclosure sale has been having a slow recovery and is not healing as well as should be due to the stress and anxiety. He has had increased pain and is taking medication for the same.

70) In fact, the depression and anxiety are so intense for Aki that she has been crying constantly and considering suicide to the point of preparing a will and considered purchasing a gun or finding the easiest way to end her life. The anxiety is like a cancer growing in her body and she will be seeking professional help.

71) The wrongful foreclosure has also impacted their marriage. They are not as patient with each other and at times this causes strife, anger, and loss of affection towards each other.

72) The wrongful foreclosure has affected their relationship with their sons who have not been told about the wrongful foreclosure and as a result have not been in communication with them.

73) The wrongful foreclosure has also impacted their relationship with friends who they do not want to communicate with or have over to their Residence.

74) Aki and Souichi feel isolate and hopeless.

9

75) Aki and Souichi incurred additional incidental actual damages including, but not limited to, gas and transportation costs traveling to the law firm, telephone call charges, postage, and other damages.

76) Aki and Souichi continues to incur attorney fees and costs in filing this suit and bringing this matter to trial.

## II.

## ARGUMENT

### 1) COURT MAY VACATE FOR MISTAKE OF LAW AND FACT

Motions for relief of orders are permitted in bankruptcy proceedings under Federal Rules of Civil Procedure 60 by virtue of incorporation in Fed. Bankr. P. Rule 9024. *In re Reading Broad., Inc.,* 386 B.R. 562, 567 (Bankr. D. Id. 2008).

Under Rule 60(b)(1), the Court may grant relief to a party from the effects of a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect…"

Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order. *See Cashner*, 98 F.3d at 576 (citing 7 James Wm. Moore et. al., Moore's Federal Practice P 60.22[2] (2d ed. 1985)).

In the instant case, Aki made the litigation mistake of not being represented by counsel (which needs no further argument). In addition, there was both mistake of fact and law by the Bankruptcy Court.

### a) MISTAKE OF FACT:

The property is not worth $990,000.00, but instead, $1,200,000.00. Thus, there is over $450,000.00 in equity.

10

The August 24, 2018 Order claims *"the foreclosure sale was properly conducted."* In fact, it ***was not property conducted*** since it took place in violation of 362 and 1301 and as a matter of law was void. See <u>Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569, 572 (9th Cir. 1992).

**b) MISTAKE OF LAW:**

**i) 362(d)(1) WAS NOT CREATED TO BLESS STAY VIOLATIONS:**

The August 24, 2018 Order granted relief of stay under 362(d)(1), which provides:

> *(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--*
> *(1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest;*

Yet the Order dated 8/24/18 cites no "cause" and "adequate protection" does not apply. The only "cause" that allegedly existed was that MAGNUM and SAI purchased the Residence at an illegal foreclosure sale which was void as a matter of law, and want to keep the same as a windfall despite Aki and Souichi losing over $450,000.00.

Yet there is nothing in 362(d)(1) that allows relief of stay for such actions in the first place. WELLS FARGO and SELECT violated the automatic stay under 362 and codebtor stay under 1301 in auctioning off the Residence with knowledge of the Bankruptcy.

Increasing corporate profits from stay violations and taking over $450,000.00 from a financially destitute couple is not "cause" for purposes of 362(d)(1).

Moreover, assuming the property still was not sold and the Bankruptcy Case was still pending, MAGNUM and SAI would have no standing for relief of stay. It would be beyond absurd for a buyer to petition the court to grant relief of stay so

11

they can buy estate property at a future foreclosure sale that is currently stayed and where the lender doesn't even seek relief of stay.

In other words, on June 15, 2018, the Bankruptcy filing date, there were no grounds MAGNUM and SAI could set forth for relief of stay for the foreclosure sale three (3) days later on June 18, 2018. If there were no grounds for relief of stay on June 15, 2018, it *was impossible to have any grounds for retroactive relief of stay after that date.*

Finally, 362(d)(2) provides that relief of stay is wot warranted unless

> *(2) with respect to a stay of an act against property under subsection (a) of this section, if—*
> *(A) the debtor does not have an equity in such property; and*
> *(B) such property is not necessary to an effective reorganization*

Section 362(d)(2) does not apply in light of over $450,000.00 in equity and fact that the residence is necessary for an effective reorganization since its sale will produce a 100% plan. Accordingly, 362(d)(1) is not a backdoor thru which 362(d)(2) already provides.

**ii)   NO GROUNDS FOR ANNULMENT UNDER <u>FJELSTED</u> FACTORS:**

To start, <u>Fjelsted</u> does not even apply since neither MAGNUM or SAI were creditors of Aki:

> *In deciding whether "cause" exists to annul the stay, a bankruptcy court should examine the circumstances of the specific case and **balance the equities of the parties' respective positions**.* <u>Gasprom, Inc. v. Fateh (In re Gasprom, Inc.)</u>, *500 B.R. 598, 607 (9th Cir. BAP 2013)(citing In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055);* <u>Fjeldsted v. Lien (In re Fjeldsted)</u>, *293 B.R. 12, 24 (9th Cir. BAP 2003). Under this approach, the bankruptcy court considers (1) whether the **creditor** was aware of the bankruptcy petition and automatic stay and (2) whether the debtor engaged in unreasonable or inequitable conduct.* <u>In re Nat'l Envtl. Waste Corp.</u>, *129 F.3d at 1055.*
> <u>Cruz v. Strauss (In re Cruz)</u>, 516 B.R. 594, 603 (B.A.P. 9th Cir. 2014)

Notwithstanding, the following application of the <u>Fjelsted</u> factors support an overall finding *against annulment*:

**1. Number of filings;**

>This factor weighs neutral. In the prior cases Debtor never proposed to sell the property. In this case she will immediately market and sell the property and provide a 100 percent dividend to all creditors. Moreover, successive filings of bankruptcy petitions are not per se bad faith. <u>Downey Savings and Loan Assoc. V. Metz</u>, 820 F.2d 1495, 1497 (9th Cir. 1987). There is no per se rule against serial filings. See <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 87-88, 115 L. Ed. 2d 66, 111 S. Ct. 2150 (1991). A genuine change of circumstances may warrant further bankruptcy relief. See <u>In re Oglesby</u>, 158 B.R. at 606 (citing In re Metz, 820 F.2d 1495, 1498 (9th Cir. 1987)).

**2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;**

>This factor is weighs against annulment. Aki was trying to reorganize her finances so could stop the foreclosure and market the house. Since there is over $450,000.00 in equity, WELLS FARGO will be paid in full and will suffer no prejudice.

**3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;**

>This factor weighs against annulment. WELLS FARGO has substantial equity in the Residence and will eventually receive FULL compensation if returned to Aki. MAGNUM and SAI have recourse against WELLS FARGO and SELECT for auctioning the property in violation of the stays. MAGNUM and SAI will net the same recovery

and profits from their causes of action against WELLS FARGO and SELECT as they do flipping the property.

**4. The Debtor's overall good faith (totality of circumstances test): cf. In re Warren, 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);**

This factor is weighs against annulment. This factor is weighs against annulment. Aki was trying to reorganize her finances so could stop the foreclosure and market the house. Since there is over $450,000.00 in equity, WELLS FARGO will be paid in full and will suffer no prejudice.

**5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;**

This factor weighs against annulment. This factor does not apply since MAGNUM and SAI are not creditors. Moreover, MAGNUM and SAI are sophisticated real estate flippers and were at a minimum on inquiry notice. They had three days prior to the sale to confirm if a Bankruptcy had been filed to decide to even show up for the sale.

**6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;**

This factor is weighs against annulment. Debtor only failed to file her schedules on time. Yet she immediately brought a motion to vacate the dismissal, has retained legal counsel, and has been compliant ever since.

**7. The relative ease of restoring parties to the status quo ante;**

This factor weighs against annulment. According to WELLS FARGO and SELECT, the money has already been returned. Aki and Souichi are still in house. No Deed has been recorded yet. MAGNUM and SAI will net the same profit since they have recourse against WELLS FARGO and SELECT per #3 above.

14

**8. The costs of annulment to debtors and creditors;**

> This factor weighs against annulment. Cost of annulment to Aki and Souichi is losing over $335,000.00 in equity, costs of relocating, and other consequential damages. MAGNUM and SAI have no costs since they will net the same profit with recourse against WELLS FARGO and SELECT per #3 above.

**9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;**

> This factor is Neutral. MAGNUM and SAI filed their motion for relief of stay within eight (8) days of the sale and Aki brought this motion within three (3) days of the Order.

**10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;**

> This factor does not apply since MAGNUM and SAI are not creditors.

**11. Whether annulment of the stay will cause irreparable injury to the debtor;**

> This factor weighs against annulment. Debtor has substantial equity of over $335,000.00. All real property is unique. (Glynn v. Marquette (1984) 152 Cal.App.3d 277, 280.) No amount of money can remedy the loss of unique real estate. Without annulment, Debtor and her husband will suffer incredible irreparable injury.

**12. Whether stay relief will promote judicial economy or other efficiencies.**

> This factor weighs against annulment. Without annulment, litigation fees and costs and judicial resources will explode. Aki and Souichi have already commenced Federal Court litigation. An adverse decision by this court will create appeals to the BAP and possibly Ninth Circuit.

      Moreover, the two (2) separate lis pendens from the Bankruptcy Court and Federal Court will cloud the Residence and make it unmarketable for years to come.

The forgoing reflects ten (9) factors against annulment, zero (0) for annulment, one (2) neutral, and one (1) not applying. Thus, the <u>Fjelsted</u> factors support an overall finding against annulment.

Notwithstanding the forgoing, **"in any given case, <u>one factor</u> may so outweigh the others as to be dispositive."** <u>Fjeldsted v. Lien (In re Fjeldsted)</u>, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003). There can be no doubt that the loss of over **<u>$335,000.00</u> is the sole one factor that outweighs the others as to be dispositive.**

Indeed, in <u>Fjeldsted</u> (which was ironically an almost identical case) the matter was remanded and the Bankruptcy Court ultimately ordered the title back to the debtor.[1] Moreover, there is not a single case in America that has ever allowed retroactive relief of stay to a third-party buyer at a foreclosure sale where there was substantial equity in the property. This Court is the first Court in history to make such a ruling, and which directly runs counter to 362(d)(2).

In fact, Court's considering this very issue have generally denied relief of stay whenever there was substantial equity. (See <u>In re Siciliano</u>, 13 F.3d 748, 752 (3d Cir. 1994), *"Given these factors, upon Prudential's request for relief under § 362(d), the bankruptcy court must consider whether Siciliano had equity in the property and if not, grant appropriate relief to Prudential;"* <u>In re Adams</u>, 215 B.R. 194, 196 (Bankr. W.D. Mo. 1997), No annulment since *"Mr. Adams estimated the value of*

---

[1] See Docket #209 in Central District Adversary Proceeding #: 2:02-ap-01423-ES *"Memorandum of decision Legal title to the property shall be restored to Fjeldsted. A status conference shall be held on 11/20/03 @ 2:00 p.m. regarding the parties' compliance with this order[see order for specific details]; with certificate of mailing RE: Item# 205 [VC] Original NIBS Entry Number: 201 (Entered: 09/18/2003)"*

*the home to be $64,000 on his bankruptcy schedules. Curry purchased the property at the foreclosure sale for $ 48,657.67;"* <u>First Am. Title Ins. Co. v. Lett (In re Lett)</u>, 238 B.R. 167, 192 (Bankr. W.D. Mo. 1999), No annulment where *"$43,958.59 in equity."*

By vacating retroactive relief of stay, Aki and Souichi will not suffer irreparable harm, MAGNUM and SAI will remain in the same position with the same profits thru recourse against WELLS FARGO and SELECT, and WELLS FARGO will be eventually paid in full.  Moreover, the unsecured creditor pool of over $127,000.00 will be paid in full the sale of the Residence.

### 2) <u>THE COURT SHOULD VACATE THE DISMISSAL:</u>

Per Aki's original Motion to Set Aside Dismissal, she did not file her balance of schedules on time since Souichi had knee surgery on June 18, 2018 and was in intense care for several weeks.  The medical condition of Souichi afforded Aki no time to file her balance of schedules.

The Bankruptcy Case was dismissed on July 3, 2018.  Nevertheless, after MAGNUM and SAI filed a Notice of Intent to Proceed with Motion for Relief/Annulment of Automatic Stay, Aki moved expeditiously and filed her motion to vacate the dismissal two (2) days later on July 5, 2018.  The Court then heard the matter and denied the motion *without prejudice* on August 1, 2018, requiring Aki to serve all parties and explain why she was unable to file the documents or seek an extension for the same.

Accordingly, this motion is also being filed to cure the defects in the previous motion to set aside dismissal.  First, this motion is being served on all parties. Second, and in explanation, Aki did not file her schedules due to Souichi's surgery and following medical complications.  Furthermore, Aki has now retained counsel,

understands the legal ramifications, and will have all documents filed within five (5) business days of the Bankruptcy Court setting aside its August 24, 2018 Order.

## III.
## CONCLUSION

Where is the equity in taking over $450,000.00 from a disenfranchised debtor and her husband because of third-party stay violations and only to increase Corporate Profits?  The Bankruptcy Court is a Court of Equity and this case ***"screams equity"*** in ***"balancing the equities of the parties' respective positions*****."**

There is absolutely no equity taking place when a debtor and her husband lose their only asset of over $450,000.00 due to stay violations.  Corporations should not be allowed to capitalize and profit on the illegal conduct of other corporations at the expense and calamity of destitute debtors.  Indeed, had this been Chapter 7, all the unsecured creditors would have been prejudiced as well with what could have been a 100% payout.  Certainly, this Court would have granted a Chapter 7 Trustee's opposition to the motion.

Equity in this case demands vacating the Order Annulling Stay.  **It is nothing short of ludicrous to hold that Corporate Capitalization on third party stay violations with huge monetary windfalls at the expense of taking hundreds of thousands of dollars from debtors is** *"cause"* **for purposes of 362(d)(1).**

By reinstating the case and vacating the August 24, 2018 Order Granting Relief/Annulment of Automatic Stay, Debtor can immediately commence payments, file her motion to sell the Residence, market the same, and pay all her creditors in full.

For the foregoing reasons, Debtor respectfully requests the Court reconsider its decision and withdraw its August 24, 2018 Order Granting Relief/Annulment of Automatic Stay and reinstate the case.

In light of the novelty of this case where Debtor is losing over $450,000.00 and fact that no other cases in the United States have ever allowed annulment of the stay under such conditions, Debtor requests certification to the Ninth Circuit for appeal purposes should this motion be denied.

Dated: August 27, 2018                                  Respectfully submitted,

**DOAN LAW FIRM, LLP**

By: /s/ Michael G. Doan
     Michael G. Doan, Esq.
     Attorney for Debtor